UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

RAMANDEEP KAUR,

     Petitioner,

v.                                                            No. 1:26-CV-093-H

MARKWAYNE MULLIN, et al.,[1]

     Respondents.

## ORDER

The Fifth Circuit held recently that aliens who are present in the United States without previously being admitted by immigration authorities—also known as "applicants for admission"—must be detained under the INA. *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026). Kaur, a native and citizen of India, is one such alien, having illegally entered the United States over two years ago. Her habeas petition, filed after the Fifth Circuit's decision in *Buenrostro-Mendez*, demands either her immediate release or a bond hearing based on the text of the INA, its implementing regulations, the Fifth Amendment, the APA, the Suspension Clause, and the *Accardi* doctrine.[2] Dkt. No. 1.

In light of *Buenrostro-Mendez*, Kaur's claims based on the INA and its implementing regulations are foreclosed. Her remaining claims fail on the merits. Neither procedural nor substantive due process require her release. Due process is a contextual concept, and in the context of alien removal, it is a limited one. Congress determined that aliens like Kaur are

---

[1] Markwayne Mullin, the United States Secretary of Homeland Security, is automatically substituted for his predecessor, Kristi Noem. *See* Fed. R. Civ. P. 25(d).

[2] The petition is inconsistent in how it describes the petitioner's sex. *Compare* Dkt. No. 1 ¶ 1 ("She entered the United States . . . ."), *with id.* ¶ 65 ("His removal proceedings remain ongoing."). The Court sticks with female pronouns since they are used most frequently in the petition.

not entitled to bond, but they are permitted to remain in U.S. custody and fight to remain here. That is more than sufficient process so far as the Due Process Clause is concerned. Kaur's frivolous equal-protection, Suspension Clause, and APA claims fail, too. And her *Accardi* claim is not cognizable in habeas. The petition (Dkt. No. 1) is denied.

## 1.    Background

In January 2024, Kaur illegally crossed into the United States at or near Lukeville, Arizona. Dkt. No. 1-1 at 2. After entering, she was encountered by immigration officials and was placed into removal proceedings with a Notice to Appear. *Id.*; Dkt. No. 1 ¶ 2. The NTA charged her with removability as an alien "present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General." Dkt. No. 1-1 at 2; *see* 8 U.S.C. § 1182(a)(6)(A)(i). She was released into the United States on her own recognizance. *See* Dkt. No. 1-1 at 4. Years later, in February 2026, ICE re-detained Kaur. Dkt. No. 1 ¶ 4. She is currently detained without bond at the Bluebonnet Detention Facility in Anson, Texas. *Id.* ¶ 10.

Kaur sought a bond hearing before an immigration judge. *Id.* ¶ 22. The IJ denied her request for lack of jurisdiction. *Id.* That conclusion followed from the Board of Immigration Appeals' decision in *Matter of Yajure Hurtado*, which holds that aliens present in the United States without admission must be detained without bond under Section 1225(b)(2)(A) of the INA for the duration of their removal proceedings. 29 I. & N. Dec. 216, 220 (BIA 2025).

Kaur then petitioned for a writ of habeas corpus. Dkt. No. 1. The petition states six claims for relief. Her first claim—ostensibly presented to preserve the argument for appeal—argues that her detention is unlawful under the INA and its implementing

regulations. *Id.* ¶¶ 63–74.  Her second claim contends that her detention violates her rights under the Fifth Amendment's Due Process Clause.  *Id.* ¶¶ 75–89.  She asserts in her third claim that her continued detention without a bond hearing constitutes arbitrary and capricious agency action under the APA.  *Id.* ¶¶ 90–101.  Fourth, she claims that she is detained pursuant to a discriminatory classification in violation of the Fifth Amendment's equal-protection guarantee.  *Id.* ¶¶ 102–14.  In her fifth claim, she argues that the lack of individualized review for her claims violates the Constitution's Suspension Clause.  *Id.* ¶¶ 115–24.  Finally, she raises an *Accardi* claim, arguing that the respondents failed to follow their own regulations in arresting and processing her.  *Id.* ¶¶ 125–35.

As mentioned above, the petition preserves for appeal a statutory claim foreclosed by the Fifth Circuit's decision in *Buenrostro-Mendez*, which agreed with *Yajure Hurtado* and upheld the government's mandatory-detention policy under Section 1225.  *See* 166 F.4th at 498.  There, the Fifth Circuit turned to the plain language of Section 1225, which provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien *shall be detained* for a proceeding under section 1229a of this title."  8 U.S.C. § 1225(b)(2)(A).  The Fifth Circuit found "no material disjunction" between the phrases "applicant for admission" and "seeking admission," and thus concluded that all applicants for admission fall within Section 1225(b)(2)(A)'s grasp.  *Buenrostro-Mendez*, 166 F.4th at 502 (quoting *Garibay-Robledo v. Noem*, 814 F. Supp. 3d 747, 754 (N.D. Tex. 2026)).

2.    **Legal Standard**

"[A]bsent suspension, the writ of habeas corpus remains available to every individual detained within the United States."  *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S.

Const. art. I, § 9, cl. 2).  With 28 U.S.C. § 2241, Congress authorized federal courts to resolve habeas petitions, including in immigration-detention cases.  *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001).  Habeas exists solely to "grant relief from unlawful imprisonment or custody."  *Pierre v. United States*, 525 F.2d 933, 935–36 (5th Cir. 1976).  Thus, for the writ to issue, the petitioner must be "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3); *see Orellana v. Kyle*, 65 F.3d 29, 31 (5th Cir. 1995).  A court considering a habeas petition must "determine the facts, and dispose of the matter as law and justice require."  28 U.S.C. § 2243.

### 3.    Analysis

As noted above, Kaur raises six claims in her habeas petition.  Dkt. No. 1 ¶¶ 63–135.  The claims run the gamut; they include a statutory claim under the INA, two different claims based on the Fifth Amendment, an APA claim, a claim alleging a violation of the Suspension Clause, and an *Accardi* claim.  *Id.*  As explained below, *Buenrostro-Mendez* forecloses Kaur's first claim.  Thus, the Court turns to her remaining claims.  The Court has considered whether the Due Process Clause[3] and the APA[4] entitle illegal aliens to individualized bond hearings in numerous prior cases.  Even so, the Court considers the arguments raised in Kaur's petition to address whether she is entitled to release on any of her five remaining claims.  The answer is no.

---

[3] *Higareda-Cano v. Noem*, No. 1:25-CV-225, 2026 WL 274495 (N.D. Tex. Jan. 30, 2026); *Goyo Martinez v. Villegas*, No. 1:25-CV-256, 2026 WL 114418 (N.D. Tex. Jan. 15, 2026); *Garibay-Robledo*, 814 F. Supp. 3d 747; *Gomez Hernandez v. Lyons*, No. 1:25-CV-216, 2026 WL 31775 (N.D. Tex. Jan. 6, 2026); *Zuniga v. Lyons*, 814 F. Supp. 3d 685 (N.D. Tex. 2025).

[4] *See, e.g.*, *Garibay-Robledo*, 814 F. Supp. 3d at 760.

A.    **Because the Court assumes jurisdiction over Kaur's petition, the Suspension Clause is not implicated.**

As a preliminary matter, the Court exercises its statutory jurisdiction under 28 U.S.C. § 2241 to address the merits of Kaur's petition.  Kaur's assertion that the respondents have "categorically bar[red] all custody review" is therefore puzzling.  Dkt. No. 1 ¶ 123. She does not explain, for example, which jurisdiction-stripping provision of the INA might be implicated by her claims, such that review would be unavailable.  Section 1252(g) "does not bar courts from reviewing an alien detention order, because such an order, while intimately related to efforts to deport, is not itself a decision to execute removal orders." *Cardoso v. Reno*, 216 F.3d 512, 516–17 (5th Cir. 2000) (internal quotation marks omitted). And the Supreme Court in *Jennings v. Rodriguez* rejected the respondents' proposed reading of the INA's jurisdiction-stripping provisions because it would "make claims of prolonged detention effectively unreviewable."  583 U.S. 281, 293 (2018).  Seeing no merit to Kaur's Suspension Clause claim, the Court turns to the four remaining claims.  *See also Livas v. Myers*, 455 F. Supp. 3d 272, 278 n.9 (W.D. La. 2020) (noting that "no cause of action arises under the Suspension Clause itself").

B.    *Buenrostro-Mendez* **forecloses Kaur's INA claim.**

Kaur challenges her detention as unlawful under the INA and its implementing regulations.  *Id.* ¶¶ 63–74.  But she is an "applicant for admission" within the meaning of Section 1225(a)(1).  Section 1225 broadly defines "applicant for admission" as "[a]n alien present in the United States who has not been admitted or who arrives in the United States."  8 U.S.C. § 1225(a)(1).  Kaur is an "alien."  She is "present in the United States." And she "has not been admitted" because she did not "lawful[ly] ent[er] [the country] after inspection and authorization by an immigration officer."  *Id.* § 1101(a)(13)(A) (defining

– 5 –

"admission" and "admitted"). As an applicant for admission, binding Fifth Circuit precedent requires that she be detained without bond under Section 1225(b)(2)(A). *See Buenrostro-Mendez*, 166 F.4th at 498.

As for the INA's implementing regulations, even if Kaur's reading of the relevant regulations were correct, she is not entitled to relief. Insofar as such regulations "contradict the plain text of [Section] 1225(b)(2)(A), the statute governs because 'a valid statute always prevails over a conflicting regulation.'" *Benitez v. Bradford*, No. 4:25-CV-6178, 2026 WL 82235, at *1 (S.D. Tex. Jan. 8, 2026) (Eskridge, J.) (quoting *Duarte v. Mayorkas*, 27 F.4th 1044, 1060 n.13 (5th Cir. 2022)).[5] Thus, Kaur's INA claim fails.[6]

### C. The Fifth Amendment does not require the government to give Kaur a bond hearing.

#### i. Procedural Due Process

Next is Kaur's claim that the government's refusal to provide a bond hearing violates the Due Process Clause of the Fifth Amendment. Dkt. No. 1 ¶¶ 75–89. She first claims that the "categorical denial of any individualized custody determination violates procedural due process." *Id.* ¶ 86. But she is not entitled to relief.

As an "applicant for admission," Kaur has "only those rights regarding admission that Congress has provided by statute." *DHS v. Thuraissigiam*, 591 U.S. 103, 140 (2020); *see Landon v. Plasencia*, 459 U.S. 21, 32 (1982) ("This Court has long held that an alien seeking initial admission to the United States requests a privilege and has no constitutional rights

---

[5] The Fifth Circuit, for its part, held that "the government's past practice" of treating unadmitted aliens as subject to Section 1226(a) pursuant to those regulations "has little to do with the statute's text." *Buenrostro-Mendez*, 166 F.4th at 506.

[6] Even if this Court were not bound by *Buenrostro-Mendez*, it would have reached the same result for the reasons discussed in its numerous prior decisions on this issue. *Supra*, n.3.

regarding his application, for the power to admit or exclude aliens is a sovereign prerogative.").  With Section 1225, Congress set the procedural rights afforded to aliens who are present in the United States without admission.  "Read most naturally," Section 1225(b)(2)(A) "mandate[s] detention of applicants for admission until certain proceedings have concluded." *Jennings*, 583 U.S. at 297.  No part of the statute "says anything whatsoever about bond hearings." *Id.*  Accordingly, Kaur is not entitled to release as a matter of procedural due process.

### ii.    Substantive Due Process

A substantive due process claim fares no better.  *See* Dkt. No. 1 ¶ 87.  That doctrine protects "only 'those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition.'" *Dep't of State v. Muñoz*, 602 U.S. 899, 910 (2024) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997)).  While still recognizing due-process rights for aliens present in the United States, *see, e.g.*, *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025), the Supreme Court has long affirmed the constitutionality of executive immigration procedures.  The "through line of history," the Supreme Court recently explained, is "recognition of the Government's sovereign authority to set the terms governing the admission and exclusion of noncitizens." *Muñoz*, 602 U.S. at 911–12.  To that end, "Congress regularly makes rules that would be unacceptable if applied to citizens." *Mathews v. Diaz*, 426 U.S. 67, 80 (1976).

The principle is no less true for immigration detention.  In fact, the Supreme Court has endorsed the constitutionality of detaining aliens without bond during the pendency of removal proceedings.  In *Demore v. Kim*, the Supreme Court acknowledged that "the Fifth Amendment entitles aliens to due process of law in deportation proceedings."  538 U.S.

– 7 –

510, 523 (2003) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)).  But it clarified that "detention during deportation proceedings" is nevertheless a "constitutionally valid aspect of the deportation process." *Id.*  Indeed, "when the Government deals with deportable aliens, the Due Process Clause does not require it to employ the least burdensome means to accomplish its goal." *Id.* at 528.  It follows that "the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings." *Id.* at 526.  Against that backdrop, the notion that substantive due process requires a bond hearing is untenable.

### iii.    Equal Protection

Kaur also argues that her detention violates her right to equal protection under the Fifth Amendment.  Dkt. No. 1 ¶¶ 102–14.  She claims that the respondents' mandatory-detention policy "creates an unjustifiable disparity between [her] and other similarly situated [aliens] who receive individualized custody determinations." *Id.* ¶ 107.  It is a peculiar claim, considering that the primary objection to the policy is its over-inclusivity. *See Buenrostro-Mendez*, 166 F.4th at 508 (Douglas, J., dissenting) ("[T]he government today asserts the authority and mandate to detain millions of noncitizens in the interior . . . on the same terms as if they were apprehended at the border.").

The Supreme Court has interpreted the Fifth Amendment to "contain[] an equal protection component prohibiting the United States from invidiously discriminating between individuals or groups." *Washington v. Davis*, 426 U.S. 229, 239 (1976).  "Fifth Amendment equal protection claims against federal actors are analyzed under the same standards as Fourteenth Amendment equal protection claims against state actors." *Butts v. Martin*, 877 F.3d 571, 590 (5th Cir. 2017) (citing *Weinberger v. Wiesenfeld*, 420 U.S. 636, 638

– 8 –

n.2 (1975)).  And "[t]o establish an Equal Protection Clause violation," Kaur "must prove

purposeful discrimination resulting in a discriminatory effect among persons similarly

situated."  *Id.* (internal quotation marks omitted).

Kaur's argument fails many times over.  She states that the government may not

"treat[] similarly situated individuals differently based solely on entry-related labels that bear

no rational relationship to present-day custody concerns."  Dkt. No. 1 ¶ 110.  She briefly

notes that she has "no criminal convictions and no record of violence or dangerous

behavior."  *Id.* ¶ 105.  Because other similarly situated detainees have received bond

hearings, she argues, the respondents' failure to give her a bond hearing is "arbitrary" and

"fails rational-basis review."  *Id.* ¶¶ 109–10.

The Court perceives two potential interpretations of Kaur's argument.  Both are

frivolous.  First, by "similarly situated," Kaur may mean factual similarity: aliens "who

have no criminal convictions," "no record of violence or dangerous behavior," or who

otherwise might merit release on bond, were they subject to discretionary detention.  *Id.*

¶ 105.  But this argument merely rehashes the merits of *Yajure Hurtado* and *Buenrostro-*

*Mendez*.  Those decisions held that such factual similarities are irrelevant for mandatory

detention under the INA.  Rather, what matters is whether (1) an alien is "an applicant for

admission" and (2) "the examining immigration officer determines" that the alien "is not

clearly and beyond a doubt entitled to be admitted."  *Buenrostro-Mendez*, 166 F.4th at 499

(quoting 8 U.S.C. § 1225(b)(2)(A)).  Far from arbitrary or discriminatory treatment, this

classification "put aliens seeking admission lawfully on equal footing with those who

entered without inspection."  *Id.* at 508.  To the contrary, it would appear arbitrary and

"strange to suggest that Congress . . . preserved bond hearings exclusively for unlawful entrants." *Id.*

Second, Kaur might be arguing that there are "similarly situated" aliens in a legal sense: those who have been detained pursuant to Section 1225(b)(2)(A), prevailed in habeas, and were granted release on bond. But *Yajure Hurtado* and *Buenrostro-Mendez* require the respondents' categorical application of Section 1225(b)(2)(A) to all applicants for admission. Kaur does not demonstrate how this creates impermissibly arbitrary or discriminatory treatment, nor does she argue that this statutory construction is a pretext for such treatment. Insofar as Kaur asserts an equal protection violation because aliens outside of the Fifth Circuit or the Northern District of Texas are treated differently from aliens in other circuits or districts, "such a claim is without merit." *Serrano v. Berkebile*, No. 3:08-CV-1587, 2009 WL 81017, at *3 n.2 (N.D. Tex. Jan. 9, 2009) (noting that jurisdictional differences like a circuit split do not create equal-protection violations).

Indeed, Congress passed the IIRIRA amendments precisely to end the differential treatment of similarly situated aliens by eliminating the so-called "entry doctrine." *Garibay-Robledo*, 814 F. Supp. 3d at 755. The entry doctrine allowed "aliens who snuck into the United States without inspection" to receive "the procedural and substantive protections afforded in deportation proceedings." *Id.* Meanwhile, "aliens who presented themselves to immigration officials for inspection . . . were subject to more summary exclusion proceedings." *Id.* (internal quotation marks omitted). By enacting the expansive definition of "applicant for admission"—the definition to which Kaur objects—Congress ensured the equal treatment of aliens, thereby "eliminat[ing] the previous incentives to enter the country illegally." *Id.*

Kaur's preferred construction of the INA would therefore result in far more disparate treatment of similarly situated aliens.  Her frivolous equal-protection claim is untenable.

**D.     The APA precludes judicial review of Kaur's claim.**

Kaur argues that "[h]abeas relief is warranted to remedy . . . unlawful agency conduct."  Dkt. No. 1 ¶ 101.  Section 704 of the APA states, in no uncertain terms, that "[a]gency action made reviewable by statute and final agency action *for which there is no other adequate remedy in a court* are subject to judicial review."  5 U.S.C. § 704 (emphasis added).  Because Kaur requests habeas relief as the remedy for her APA claim, she unwittingly admits that there is, in fact, an adequate remedy outside of the APA.  Moreover, the Supreme Court recently held that "where an alien detainee's claims 'necessarily imply the invalidity of their confinement' these claims must be brought in habeas."  *P.B. v. Bergami*, No. 3:25-CV-2978, 2025 WL 3632752, at *9 (N.D. Tex. Dec. 13, 2025) (O'Connor, C.J.) (quoting *J.G.G.*, 604 U.S. 670, 672 (2025)).  The APA thus does not provide for judicial review of her claim.

**E.     Kaur's *Accardi* claim is not cognizable in habeas.**

Finally, Kaur argues that the respondents failed to follow the "immigration-specific arrest and processing regulations" set out in 8 C.F.R. § 287.8(c).  Dkt. No. 1 ¶ 127.  "By arresting [her] without a warrant and without satisfying the regulatory requirements governing such arrests," she argues, the respondents "violated the *Accardi* doctrine."  *Id.* ¶ 134.  To remedy this violation, Kaur demands "[her] immediate release."  *Id.* ¶ 135.

The *Accardi* doctrine requires agencies to follow their own rules and procedures.  *See United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954); *Morton v. Ruiz*, 415 U.S. 199, 235 (1974) ("Where the rights of individuals are affected, it is incumbent upon agencies to

follow their own procedures."). The regulatory requirements for the arrests of aliens are set forth in 8 C.F.R. § 287.8(c). "An arrest shall be made only when the designated immigration officer has reason to believe that the person to be arrested . . . is an alien illegally in the United States." § 287.8(c)(2)(i). And "[a] warrant of arrest shall be obtained except when" the officer with authority to arrest "has reason to believe that the person is likely to escape before a warrant can be obtained." § 287.8(c)(2)(ii).

Merits aside, Kaur's *Accardi* claim "is inapposite in a petition for habeas relief." *Huynh v. Noem*, No. 4:26-CV-017, 2026 WL 694481, *3 (N.D. Tex. Mar. 12, 2026) (O'Connor, C.J.). Writs of habeas corpus are "available to correct the denial of fundamental constitutional rights, but [they] may not be used to correct mere irregularities or errors of law." *Wooten v. Bomar*, 267 F.2d 900, 901 (6th Cir. 1959). "The Fifth Circuit has confirmed in other contexts that the failure of officials 'to follow their own policies, without more, does not constitute a violation of due process,' making a writ of habeas corpus generally not available." *Nguyen v. Noem*, 797 F. Supp. 3d 651, 664 (N.D. Tex. 2025) (quoting *Iruegas-Maciel v. Dobre*, 67 F. App'x 253, 253 (5th Cir. 2003)). In other words, habeas exists solely to "grant relief from unlawful imprisonment or custody and it cannot be used properly for any other purpose." *Pierre*, 525 F.2d at 935–36. It is "not like an action to recover damages for an unlawful arrest or commitment, but its object is to ascertain whether the [alien] can lawfully be detained." *United States ex rel. Bilokumsky v. Tod*, 263 U.S. 149, 158 (1923).

Kaur does not explain why her detention—which is mandatory under 8 U.S.C. § 1225(b)(2)(A)—is rendered unlawful by virtue of the alleged regulatory noncompliance. She states, without a supporting citation, that "[c]ontinued detention based on an arrest that

contravenes binding regulations is itself unlawful."  Dkt. No. 1 ¶ 132.  And she asserts that habeas is an "appropriate vehicle to remedy detention that results from an agency's failure to follow its own regulations," citing *Accardi*, 347 U.S. at 267–68 and *INS v. St. Cyr.*, 533 U.S. 289, 301–05 (2001).  *Id.* ¶ 133.  But *St. Cyr* and *Accardi* merely recognized the availability of habeas to "answer[] questions of law that arose in the context of discretionary relief."  533 U.S. at 307 (citing *Accardi*, 347 U.S. 260).  They did not turn the Great Writ into a free-wheeling vehicle for challenging all manner of regulatory violations.

Therefore, the Court concludes that Kaur's *Accardi* claim is not cognizable in habeas. *See Wilkinson v. Dotson*, 544 U.S. 74, 81–82 (2005) (explaining that when a petitioner's claim will not necessarily spell speedier release, it does not lie within the core of habeas).  Because Kaur is subject to mandatory detention as a matter of binding Fifth Circuit precedent, *see Buenrostro-Mendez*, 166 F.4th at 498, nothing about the purported regulatory violation calls into question the validity of her confinement.

### 4.    Conclusion

In short, Kaur, as an "applicant for admission," is properly detained without bond under Section 1225(b)(2)(A).  *Buenrostro-Mendez*, 166 F.4th at 498.  The Fifth Amendment does not require her release in these circumstances, nor does the APA, the Suspension Clause, or the *Accardi* doctrine.  Thus, the petition (Dkt. No. 1) is denied.

So ordered on May 6, 2026.

JAMES WESLEY HENDRIX
UNITED STATES DISTRICT JUDGE